UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

STEVEN GASS,                         )
                                     )
              PLAINTIFF              )
                                     )
         VS.                         )      CAUSE NO. 1:16-CV-292 RLM-SLC
                                     )
NANCY A. BERRYHILL,[1] ACTING        )
COMMISSIONER OF SOCIAL SECURITY,     )
                                     )
              DEFENDANT              )

OPINION AND ORDER

Steven Gass seeks judicial review of a final decision by the Commissioner
of Social Security denying his applications for disability insurance benefits under
the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this
action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court
vacates the Commissioner's decision and remands this case for further
proceedings consistent with this opinion.


I. BACKGROUND

Mr. Gass's application for Disability Insurance Benefits was denied
initially, on reconsideration, and following an administrative hearing at which he
and a vocational expert testified. Based on the record before her, the ALJ found

---

[1] Nancy A. Berryhill was automatically substituted as the defendant in this case when
she replaced Carolyn W. Colvin as the Acting Commissioner of Social Security pursuant
to Federal Rule of Civil Procedure 25(d).

that Mr. Gass had severe impairments, degenerative disc disease, obesity, and diabetes, but concluded that none of Mr. Gass's impairments met or medically equaled any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1.

The ALJ decided that Mr. Gass had the residual functional capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), with limitations;[2] and that he couldn't perform his past relevant work, but could do other jobs available in significant numbers. The ALJ concluded that Mr. Gass wasn't disabled within the meaning of the Social Security Act and wasn't entitled to benefits.

When the Appeals Council denied Mr. Gass's request for review, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

II. Standard of Review

The issue before the court isn't whether Mr. Gass is disabled, but whether substantial evidence supports the ALJ's decision that he wasn't disabled. Scott

---

[2] The ALJ concluded that Mr. Gass was limited to lifting and carrying 20 pounds occasionally and ten pounds frequently, standing and walking for two hours in an eight hour workday, and sitting for up to six hours during an eight hour workday. The ALJ indicated that Mr. Gass couldn't climb ladders, ropes, or scaffolds, and limited him to only occasional stooping, kneeling, crouching, crawling, and climbing stairs and ramps. The ALJ also determined that Mr. Gass "must avoid concentrated exposure to hazards such as unprotected heights or slippery terrain."

v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000), but instead must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). ALJs must "sufficiently articulate their assessment of the evidence to assure [the court] that they considered the important evidence and to enable [the court] to trace the path of their reasoning." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (internal quotations omitted).

## III. DISCUSSION

Mr. Gass argues that the ALJ made several errors requiring remand: (1) the ALJ improperly determined that Mr. Gass didn't meet Listing 11.14 for peripheral neuropathy; (2) the ALJ didn't properly consider Mr. Gass's mental capacity (3) the ALJ didn't proper consider the combined effects of Mr. Gass's impairments, including the effect of his obesity; (4) the ALJ didn't provide a proper hypothetical to the vocational expert; (5) the ALJ improperly accepted unreliable information from the vocational expert; and (6) the ALJ's credibility determination was flawed. Mr. Gass asks the court to either reverse the Commissioner's decision and award benefits or remand the case for further proceedings.

## A. Listing 11.14

Mr. Gass first argues that the ALJ erred in finding that his impairments didn't meet or equal Listing 11.14. A claimant meets Listing 11.14 if he or she has "disorganization of motor function in two extremities" that results "in an extreme limitation . . . in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Mr. Gass argues that the use of both a brace and cane, combined with his difficulties standing, equals Listing 11.14, which, in its relevant part, requires that the claimant be "unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as

a walker, two crutches, or two canes." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Commissioner responds that the ALJ fully explained why Mr. Gass's condition didn't meet or equal this listing, her opinion is supported by the opinions of state agency medical consultants Joshua Eskonen and Jonathon Sands, and Mr. Gass offered no authority for his contention that the use of both a cane and a foot brace should equal Listings 11.14.

Under the Social Security regulations, a claimant is automatically considered disabled if his or her impairment meets or equals one of the specific listed impairments in the appendix to the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Mr. Gass "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." Ribaudo v. Barnhart, 458 F.3d 580, 583 (7th Cir. 2006). A listing determination should be upheld if the ALJ mentions the specific listing under consideration and the analysis isn't perfunctory. Id.

The ALJ determined that Mr. Gass's "diabetic neuropathy does not meet the criteria of listing 11.14 for peripheral neuropathy because the claimant does not have sufficient sustained disturbance of gait and station (locomotion) or sufficient disturbance of gross and dexterous movements (use of fingers, hands, and arms) despite treatment as defined in listing 11.04B and as defined in 11.00C." The ALJ also noted that he was "able to ambulate effectively without using assistive devices in both upper extremities; he testified that he uses one cane primarily for balance while walking[ and he was] able to use at least one

upper extremity effectively for gross and fine movements." Mr. Gass doesn't claim he requires a walker, two crutches, or two canes.

The ALJ's listing determination wasn't improper. She mentioned the applicable listing, discussed relevant evidence, and her analysis wasn't perfunctory. *See* <u>Ribaudo v. Barnhart</u>, 458 F.3d 580, 583 (7th Cir. 2006). Further, her determination was supported by the opinions of two state agency medical consultants who opined that Mr. Gass didn't meet a listing. *See* <u>Scheck v. Barnhart</u>, 357 F.3d 697, 700 (7th Cir. 2004) (recognizing that an ALJ may rely on the opinions of state agency physicians to support a listing determination).

## B. The ALJ's Consideration of Mr. Gass's Mental Capacity

Mr. Gass contends that the ALJ improperly discounted the opinion of psychological examiner Paula Neuman, Psy.D., who found that his global assessment of functioning (GAF) score was 30 [3] and diagnosed him with Asperger's disorder, attention deficit hyperactivity disorder, and major depressive disorder. The Commissioner responds that the ALJ properly gave Dr. Neuman's opinion little weight because it was inconsistent with the record as a

---

[3] A GAF score represents the clinician's judgment of the patient's psychological, social, and occupational functioning. AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000). The Diagnostic and Statistical Manual of Mental Disorders no longer includes the GAF metric, but ALJ's may still consider GAF scores as opinion evidence, *see* <u>Williams v. Colvin</u>, 757 F.3d 610, 613 (7th Cir. 2014), but "a low GAF score alone is insufficient to overturn an ALJ's finding of no disability." <u>Bates v. Colvin</u>, 736 F.3d 1093, 1099 n. 3 (7th Cir.2013).

whole.

Dr. Neuman wasn't a treating source; she only examined Mr. Gass once. *See* Simila v. Astrue, 573 F.3d 503, 514 (7th Cir. 2009) (recognizing that a nontreating source is one who doesn't have an "ongoing treatment relationship" with the patient). Under the regulations, the ALJ must decide the weight to give a nontreating physician's opinion by considering whether the expert is a specialist and whether the opinion is consistent with the record as a whole, among other factors. Id. at 515.

The ALJ properly addressed these factors when determining that Dr. Neuman's opinion was entitled to little weight. The ALJ recognized that Dr. Neuman was a consultative psychological examiner but found that her opinion was inconsistent with the record. She discussed the medical evidence, indicating that Mr. Gass had no past history of Asperger's or attention deficit hyperactivity disorder and other "notes about mental status elsewhere show normal functioning." The ALJ also recognized that Dr. Neuman found Mr. Gass's GAF score was 30, which suggests "[b]ehavior is considerably influenced by delusions or hallucinations [or] serious impairment in communication or judgment. . . [or] inability to function in almost all areas. AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000). The ALJ found that this GAF score was anomalous because the symptoms that might lead to such a score weren't reported elsewhere in the record and suggested this score could have been due to sleep-deprivation or "idiosyncratic scoring by Dr.

Neuman." She indicated that no other examining or treating physicians found such extreme symptoms or gave such a diagnosis.[4] The ALJ also noted that no other medical source reported that Mr. Gass displayed "questionable contact with reality or [an] inability to sustain a conversation without constant redirection."

Mr. Gass suggests that because Dr. Neuman was the only psychologist who examined him, it was improper for the ALJ to discount her opinion. But neither the regulations nor the court of appeals require that the ALJ have an examining psychological expert opinion to rely on when discounting the opinion of another expert in the field. *See* Simila v. Astrue, 573 F.3d 503, 515 (7th Cir. 2009). And while the ALJ gave little weight to Dr. Neuman's opinion, she gave great weight to the opinion of the state agency psychological consultant, Benetta Johnson Ph.D., who found Mr. Gass's mental impairments weren't severe. The ALJ could properly rely Dr. Johnson's opinion; she reviewed the entire record and is "highly qualified and [an] expert[ ] in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(2); Flener ex rel. Flener v. Barnhart, 361 F.3d 442, 447–448 (7th Cir.2004).

### C. Combined Effects of Impairments, Including Obesity

Mr. Gass next contends that the ALJ erred by not giving full consideration

---

[4] Dr. Svetlana Hagan, Mr. Gass's treating primary care physician, did diagnose him with depressive disorder.

to the combined effect of his impairments in making her residual functional capacity assessment, including the effect of his obesity on other impairments.[5] The Commissioner responds that the ALJ properly considered the combined effects of Mr. Gass's impairments, including his obesity.

The ALJ must "consider the *aggregate* effect of th[e claimant's] entire constellation of ailments–including those impairments that in isolation are not severe." Golembiewski v. Barnhart, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original); 20 C.F.R. §§ 404.1523. *See also* Williams v. Colvin, 757 F.3d 610, 613 (7th Cir. 2014); Browning v. Colvin, 766 F.3d 702, 706 (7th Cir. 2014). Social Security Ruling 02–1p requires that an ALJ "consider the effects of obesity together with the underlying impairments, even if the individual does not claim obesity as an impairment." Prochaska v. Barnhart, 454 F.3d 731, 736 (7th Cir. 2006).

The record shows that the ALJ considered the combined effect of Mr. Gass's impairments. For example, she indicated that her determination was based on "the combined effects of all the claimant's medically determinable impairments." It was especially important for her to consider the combined effect of Mr. Gass's degenerative disc disease and his obesity were severe impairments

---

[5] Mr. Gass also complains that the ALJ never cited 20 C.F.R. §§ 404.1523, the regulation requiring that the ALJ consider the combined effect of a claimant's impairments but doesn't cite authority for the proposition that the ALJ must cite this regulation to satisfy her obligation to consider the claimant's impairments in the aggregate.

because obesity can aggravate the disabling effect of degenerative disc disease. *See* Gentle v. Barnhart, 430 F.3d 865, 868 (7th Cir. 2005). *See also* Goins v. Colvin, 764 F.3d 677, 681 (7th Cir. 2014); SSR 02–1p, 2002 WL 34686281 (Sept. 12, 2002). She recognized that Mr. Gass's body mass index was 42.22, which qualifies as morbidly obese, Goins v. Colvin, 764 F.3d 677, 681 (7th Cir. 2014), noted that his obesity made certain postural movements more difficult, and considered "the effects of the claimant's obesity on other body systems." This demonstrates that she properly considered the combined effects of Mr. Gass's impairments, including his obesity.

### D. ALJ's Hypothetical to the Vocational Expert

Mr. Gass next asserts that remand is required because the ALJ's hypothetical to the vocational expert didn't properly address his use of a cane; a foot brace; his manipulation and grasping problems; or Dr. Hagan's opinion that he would likely miss four days of work per month, be off task 25 percent of the workday, and need regular work breaks. The Commissioner responds that the ALJ appropriately declined to include these limitations in the hypothetical provided to the vocational expert because she found them to be unsupported.

"ALJs must provide [vocational experts] with a complete picture of a claimant's residual functional capacity." Murphy v. Colvin, 759 F.3d 811, 820 (7th Cir. 2014), *as amended* (Aug. 20, 2014). "Hypothetical questions posed to vocational experts ordinarily must include all limitations supported by medical

evidence in the record." <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002).

A hand-held assistive device can be considered a limitation and is medically required if there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." <u>Thomas v. Colvin</u>, 534 F. App'x 546, 550 (7th Cir. 2013) (quoting SSR 96-9P, 1996 WL 374185, at *7); <u>Jones v. Astrue</u>, 310 F. App'x 286, 290 (10th Cir. 2009). *See also* <u>Tripp v. Astrue</u>, 489 F. App'x 951, 955 (7th Cir. 2012) (requiring "an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary").

Mr. Gass's treating physician, Dr. Hagan, reported that his use of a cane was medically necessary and that he required it for standing or walking. Occupational Therapist Shannon Mills reported that Mr. Gass was a fall risk, has balance problems, and uses a cane to assist with these issues. The ALJ didn't discuss whether she believed Mr. Gass's cane was medically necessary or address the medical opinion evidence from Dr. Hagan or Ms. Mills regarding Mr. Gass's use of a cane.

The Commissioner argues that Mr. Gass's cane wasn't medically necessary, noting that consultative examining physician B.T. Onamusi, M.D. opined that Mr. Gass "did not require an assistive device for ambulation or transfer." But the ALJ didn't refer to Dr. Onamusi's opinion in her decision, so the Commissioner can't rely on that to support her decision. *See* <u>Mendez v. Barnhart</u>, 439 F.3d 360, 362 (7th Cir. 2006) (the Commissioner violates the

*Chenery* doctrine if it defends an ALJ decision "on a ground that he himself did not mention").

While remand can be appropriate where the ALJ doesn't properly address a claimant's need for a cane, <u>Thomas v. Colvin</u>, 534 F. App'x 546, 550 (7th Cir. 2013), the Commissioner contends that remand isn't appropriate in this case because the use of a cane didn't affect Mr. Gass's ability to perform the sedentary level occupations identified by the vocational expert. The Commissioner cites Social Security Ruling 96-6P for support, which states that "if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." SSR 96-9P, 1996 WL 374185 (July 2, 1996).

But Dr. Hagan's opinion that Mr. Gass's cane was medically necessary doesn't limit his use of the cane to "prolonged ambulation, walking on uneven terrain, or ascending or descending slopes." She said Mr. Gass needs the cane even for occasional standing or walking. Furthermore, the Social Security Administration ruling states that the "occupational base for an individual who must use [a hand-held assistive] device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded." <u>Id.</u> Mr. Gass testified that he used the cane for balance. Ms. Mills indicated that Mr. Gass lost his balance, tripped, or nearly fell daily and used a cane for balance. Multiple medical sources diagnosed

Mr. Gass with peripheral neuropathy, which the ALJ found affected both of his lower extremities, limiting his ability to walk and stand for extended periods. Based on this medical evidence, SSR 96-9P suggests that Mr. Gass's ability to perform even sedentary occupations may be significantly eroded. Remand is required for the ALJ to appropriately address Mr. Gass's use of a cane.

Mr. Gass also complains that the ALJ's hypothetical to the vocational expert didn't reference his use of a foot brace due to right foot drop or address any limitations Mr. Gass might have in operating foot controls, although Dr. Hagan's opinion included foot controls limitations. The ALJ's opinion recognized that "[r]epeated physical examinations have shown the right foot drop" and that Mr. Gass wore a brace on his right foot, but didn't explain the ALJ's rationale for excluding the foot brace or foot control limitations in her decision. On remand, the ALJ should properly address Mr. Gass's use of a foot brace and determine whether to include foot controls limitations.

Next, Mr. Gass argues that the ALJ's improperly omitted manipulative limitations from the hypothetical. But the ALJ thoroughly discussed why she found that Mr. Gass's carpal tunnel syndrome didn't cause more than minimal limitations so she didn't include manipulative limitations in her residual functional capacity determination.

Mr. Gass also asserts that the ALJ erred by not including Dr. Hagan's limitations regarding his ability to work regularly and stay on task while at work in her hypothetical to the vocational expert. Dr. Hagan reported that Mr. Gass

would miss more than four days per month as a result of his impairments or treatment and would be off task at least 25 percent of his time at work. The vocational expert testified that an employer would tolerate an individual missing no more than one day of work per month and that an individual could only be off task up to 14 percent of the work day.

The Commissioner argues that the ALJ properly considered Dr. Hagan's opinion, giving it little weight and declining to include the work limitations in her hypothetical. Dr. Hagan was Mr. Gass's treating physician and a treating physician's opinion deserves controlling weight if the ALJ finds that a treating source's opinion on the nature and severity of impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Allord v. Astrue, 631 F.3d 411, 416–417 (7th Cir. 2011); Larson v. Astrue, 615 F.3d 744, 749 (7th Cir. 2010). "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer good reasons for declining to do so." Larson v. Astrue, 615 F.3d 744, 749 (7th Cir. 2010) (internal quotation omitted). The applicable regulations "guide that decision by identifying several factors that an ALJ must consider: 'the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion.' " Campbell v. Astrue, 627 F.3d at 308 (quoting Larson v. Astrue, 615 F.3d at 751).

The ALJ noted that Dr. Hagan was Mr. Gass's treating physician but isn't

a specialist, acknowledged the length of the treating relationship, and frequency of examinations, some of the testing performed, and recognized that her opinion conflicted with evidence in the record, including the opinions of the state agency experts and so afforded Dr. Hagan's opinion little weight. The ALJ's opinion demonstrates that she properly considered Dr. Hagan's opinion, offered good reasons for the weight she assigned it, and didn't err when she declined to include Dr. Hagan's limitations in the hypothetical provided to the vocational expert.

### E. The ALJ's Consideration of the Vocational Expert's Testimony

Mr. Gass asserts that the ALJ erroneously accepted testimony inconsistent with the DOT, namely inaccurate Dictionary of Occupational Titles (DOT) numbers associated with two of the three occupations identified. [6] The Commissioner acknowledges that the vocational expert gave the ALJ inaccurate DOT-identifying numbers for two of the three jobs he identified. The vocational expert gave DOT number 715.687-010 for the job of "assembler" while that DOT number actually corresponds with the job of band attacher and DOT number 559.687-014 for the job of "packager" while that DOT number corresponds with

---

[6] Mr. Gass also contends that the ALJ erred by not asking the vocational expert if his testimony was consistent with the DOT in contravention of SSR 00-4p, but she did ask if his testimony would be consistent with the DOT before giving him the hypothetical. This satisfies the ALJ's obligation under SSR 00-4p, which requires that the ALJ inquire about any conflict between a vocational expert's testimony and the DOT before the ALJ relies on that testimony. Weatherbee v. Astrue, 649 F.3d 565, 570 (7th Cir. 2011).

the job of ampoule sealer. The ALJ didn't acknowledge this discrepancy either at the hearing or in her opinion, which cites the erroneous DOT numbers and relies on them.

SSR 00–4p places an affirmative duty on an ALJ to "investigate and resolve any apparent conflict between the [vocational expert's] testimony and the DOT." <u>Weatherbee v. Astrue</u>, 649 F.3d 565, 570 (7th Cir. 2011); SSR 00–4p, 2000 WL 1898704, at *2. "A conflict is apparent if it is so obvious that the ALJ should have picked up on [it] without any assistance." <u>Weatherbee v. Astrue</u>, 649 F.3d 565, 570 (7th Cir. 2011) (internal quotation omitted). A conflict need not be apparent at the time of the hearing, but it must be apparent "at least by the time the ALJ produced his ruling." <u>Overman v. Astrue</u>, 546 F.3d 456, 464 (7th Cir. 2008).

The ALJ didn't need assistance to recognize that the DOT number were inaccurate and should have discovered the error when she wrote her opinion relying on the occupational data, so the conflict was apparent. Despite this apparent conflict, the ALJ didn't investigate and resolve the conflict as required by the court of appeals. Instead, she relied on the inaccurate vocational expert's testimony in her opinion. An ALJ's ruling isn't based on substantial evidence if it is premised on unreliable testimony from a vocational expert because the Commissioner bears the burden of demonstrating that jobs the claimant can perform exist in significant numbers in the economy. <u>Overman v. Astrue</u>, 546 F.3d 456, 464 (7th Cir. 2008); <u>Britton v. Astrue</u>, 521 F.3d 799, 803 (7th Cir.

2008).

The Commissioner argues that even if the ALJ erred in relying on the vocational expert's testimony about the jobs of assembler and packager, the error was harmless because the third job identified by the vocational expert, order clerk, was correctly identified and exists in significant numbers. *See* Coleman v. Astrue, 269 F. App'x 596, 602 (7th Cir. 2008) (an ALJ's error in not probing and resolving a conflict between a vocational expert's testimony and the DOT is harmless if "a significant number of jobs cited by the ALJ and not inconsistent with the DOT remained available" to the claimant).

The vocational expert estimated that there were about 400 order clerk jobs in Indiana and 20,000 nationally. Because "the vocational experts who testify in social security disability cases concerning the availability of jobs . . . almost always confine their testimony to indicating the number of such jobs that exist in the applicant's state, or an even smaller area" and few cases rely on national job numbers, the court of appeals focuses more attention on the availability of jobs regionally rather than nationally. Barrett v. Barnhart, 368 F.3d 691, 692 (7th Cir. 2004). The vocational expert's estimate that 400 order clerk jobs were available in Indiana is substantially less than the 1,000 that the court of appeals typically considers a significant number.[7] Liskowitz v. Astrue, 559 F.3d 736, 743

---

[7] The jobs the vocational examiner identified also give rise to a concern that the Dictionary of Occupational Titles in use in today's social security disability hearings might not reflect the job market in 2017, in an age of globalization and digitization of tasks. See, e.g., Alaura v. Colvin, 797 F.3d 503, 508 (7th Cir. 2015) ("And does anyone

(7th Cir. 2009). The court, therefore, declines to hold that the ALJ's error was harmless and remand on this issue is required.

## F. The ALJ's Credibility Determination

Mr. Gass asserts two errors regarding the ALJ's credibility determination: (1) she didn't fully credit his pain allegations and (2) she improperly relied on his lack of treatment to undermine his pain allegations. The Commissioner responds that the ALJ properly considered both Mr. Gass's pain allegations, crediting some and discounting others, and his decisions not to pursue recommended treatment.

An ALJ's credibility determinations "are entitled to special deference because the ALJ is in a better position than the reviewing court to observe a witness," but those determinations "are not immune from review." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 354 (7th Cir. 2005); *see also* Schmidt v. Astrue, 496 F.3d 833, 843 (7th Cir. 2007) ("[b]ecause the ALJ is in the best position to observe witnesses, [the court] will not disturb [his] credibility determinations as long as they find some support in the record"). The reviewing court must determine whether the ALJ's determination "was reasoned and

---

use a typewriter any more?"); Voight v. Colvin, 781 F.3d 871, 878 (7th Cir. 2015). Given the software available to today's businesses, one might wonder whether 400 order clerks are to be found in Indiana today; given the past decade's rise in use of smartphones to tell time, one must wonder whether there are any remaining jobs in which people in the United States attach watchbands to wristwatches. The parties haven't raised such issues, so the court says no more about the Dictionary of Occupational Titles.

supported," <u>Elder v. Astrue</u>, 529 F.3d 408, 413 (7th Cir. 2008), and shouldn't "overturn an ALJ's credibility determination unless it is patently wrong." <u>Shideler v. Astrue</u>, 688 F.3d 306, 311 (7th Cir. 2012) (internal quotations omitted).

To the extent that Mr. Gass argues that the ALJ simply disregarded his pain allegations because they weren't supported by objective medical evidence, his argument isn't persuasive. The ALJ properly considered whether objective medical evidence supported Mr. Gass's pain allegations, noting that x-ray evidence and medical reports didn't support his allegations of severe arthritis in his hands, for example. *See* <u>Powers v. Apfel</u>, 207 F.3d 431, 435 (7th Cir. 2000).

But the gravamen of the ALJ's credibility determination is her opinion that Mr. Gass's noncompliance with treatment undermined his pain allegations. She opined that "various medical exhibits and his testimony show [a] lack of follow-through," noted that Mr. Gass didn't see the surgeon he was referred to to determine whether back surgery was required, opted against epidural injections in his back, and declined both surgery on and injections for his shoulder. The ALJ also discussed his withdrawal from physical therapy and his decision not to complete a recommended home exercise program.

An ALJ can consider noncompliance with treatment when making a credibility determination, but shouldn't if there are good reasons for noncompliance. <u>Murphy v. Colvin</u>, 759 F.3d 811, 816 (7th Cir. 2014). Good reasons for noncompliance include the inability "to afford the treatment, further treatment would have been ineffective, or the treatment created intolerable side

effects." Id. "[A]n ALJ may need to question the individual at the administrative proceeding to determine whether there are good reasons the individual did not seek medical treatment or fully comply with prescribed treatment." Id.

The ALJ's reliance on noncompliance for her adverse credibility determination doesn't comply with the court of appeals' requirements. At the hearing, the ALJ didn't ask Mr. Gass about her concerns regarding his noncompliance with treatment recommendations, although he did testify that physical therapy didn't seem to help and caused him pain. There is evidence in the record suggesting that had the ALJ inquired, she would have found that Mr. Gass's treatment decisions were influenced by his inability to pay for treatment, in addition to the pain associated with his physical therapy. Dr. Hagan reported that Mr. Gass "currently doesn't have any health insurance[,] which limits his access to medical treatment" and held off on laboratory testing because he didn't have health insurance. His occupational therapist noted that Mr. Gass requested less frequent treatment "due to finances and gas to drive to therapy." Dr. Hagan, Dr. Neuman, and Dr. Michael Arata each noted that Mr. Gass didn't have health insurance. Dr. Neuman reported that Mr. Gass told her that he "pays cash for all of his medical services and medications."

But "the ALJ did not ask important questions to determine if [Mr. Gass's] actions were justifiable" so this court "cannot assess the validity of the ALJ's credibility determination," Murphy v. Colvin, 759 F.3d 811, 816 (7th Cir. 2014), *as amended* (Aug. 20, 2014), or determine whether the ALJ's credibility

20

determination was reasoned and supported, so remand is required. <u>Elder v.</u> <u>Astrue</u>, 529 F.3d 408, 413 (7th Cir. 2008).

IV. CONCLUSION

The court VACATES the Commissioner's decision and REMANDS this case for further proceeding consistent with this opinion.

SO ORDERED.

ENTERED:   <u>  August 28, 2017   </u>

<u>     /s/ Robert L. Miller, Jr.      </u>
Judge, United States District Court